[Cite as *State v. Cumberland*, 2014-Ohio-185.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | |
| | | Case Nos. 13CA8, 13CA9 |
| vs. | : | |
| | | <u>DECISION AND</u> |
| TONY CUMBERLAND, | : | <u>JUDGMENT ENTRY</u> |
| Defendant-Appellant. | : | RELEASED 01/15/2014 |

<u>APPEARANCES:</u>

Timothy Young, Ohio State Public Defender, and Valerie Kunze, Assistant State Public Defender, Columbus, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecuting Attorney, Hillsboro, Ohio, for Appellee.

Hoover, J.

{¶ 1}  This is an appeal from the Highland County Common Pleas Court, in which appellant Tony Cumberland pled no contest to, and was found guilty of, sexual battery, a third-degree felony, in violation of R.C. 2907.03(A)(1).  Cumberland contends that the trial court violated his due process rights when it denied his motion to dismiss his indictment due to unjustified pre-indictment delay.  Because Cumberland failed to demonstrate actual prejudice as a result of the delay, the trial court acted properly in denying his motion.  Accordingly, we find Cumberland's argument to be without merit and affirm the judgment of the trial court.

{¶ 2}  A review of the record reveals the following facts pertinent to this appeal.

{¶ 3}  In May 1995, an unidentified male sexually assaulted Lisa Ann Early near Hillsboro, Ohio.  The Highland County Sheriff's Department investigated the case and collected

items of Ms. Early's clothing and also a rape kit that was completed at the Highland District Hospital. The rape kit and clothing were sent to the Bureau of Criminal Identification and Investigation ("BCI&I") in June 1995. Cumberland, meanwhile, was convicted of rape and burglary in an unrelated 2001 incident. A DNA sample was obtained from Cumberland by the Hillsboro Police Department and submitted to BCI&I for placement in the CODIS system for future comparisons.

{¶ 4} In March 2003, BCI&I sent a report to the sheriff's department indicating a DNA match between the specimens found in the rape kit with the Cumberland sample from the CODIS database.

{¶ 5} The case was reopened by the sheriff's department; but years passed with no indictment. Then, in 2012 the sheriff's department again renewed its investigation.

{¶ 6} An indictment was eventually filed against appellant in November 2012, charging Cumberland with one count of rape in violation of R.C. 2907.02(A)(2), for the 1995 incident.

{¶ 7} Cumberland moved the trial court to dismiss the indictment for lack of timely prosecution and pre-indictment delay. A hearing was held on January 16, 2013, on the issue of pre-indictment delay. At the hearing, Denny Kirk testified that he worked as a detective for the sheriff's department in 2003. Kirk reviewed the 2003 report from the BCI&I crime lab indicating the DNA match. At that time, Kirk located Ms. Early, spoke with her on the telephone, and created a case file. Kirk testified that Ms. Early was interested in pursuing charges at that time.

{¶ 8} Kirk further testified that he was aware that Cumberland was already in prison for the 2001 convictions and due to a large caseload and personnel cutbacks the case was "put on the backburner" due to higher priority cases that he was investigating. When Kirk left to attend

law school and took educational leave from the department, he cleaned out his files and located the case file. Upon locating the file in May 2012, he presented the file to Detective Dan Croy.

{¶ 9}    Sheriff Ronald D. Ward testified that a letter about the case and the BCI&I report were sent to the Highland County Prosecutor's Office on April 28, 2003. The letter was sent via fax; and the letter and fax confirmation were presented at the hearing. Ward did not recall the response from the prosecutor's office in 2003.

{¶ 10}  Detective Dan Croy discussed the evidence obtained on May 29, 1995. He testified to the collection of the victim's clothing, and to the completion of the rape kit. Croy testified that Deputy Donnie Walker, since deceased, placed the rape kit and clothing in the evidence room at the sheriff's department until it was delivered to BCI&I.

{¶ 11}  It was further established at the hearing that the state still had the original rape kit and could make the contents available to Cumberland for independent DNA testing. In fact, the trial court provided Cumberland with a DNA expert to review the BCI&I report and to perform independent testing.

{¶ 12}  Following the presentation of evidence at the January 16, 2013 hearing, the trial court noted that Cumberland had yet to show actual prejudice as a result of the pre-indictment delay. The trial court, however, left the record open, and continued the hearing to allow Cumberland to present additional evidence.

{¶ 13}  On March 20, 2013, Cumberland renewed his motion to dismiss with additional information regarding Ms. Early's medical records. A hearing was held on the renewed motion on March 22, 2013. At the hearing, the state stipulated that the medical records of the victim were destroyed in 2005 pursuant to the hospital's records retention policy. Cathy Jones testified that she was an emergency room nurse at the Highland District Hospital during the time of the

1995 incident. She further testified that records involving emergency room patients typically included patient demographics, nursing care notes, assessment notes, vital sign information, physician notes, and the results of any in-house laboratory tests.

{¶ 14} At the conclusion of the hearing, the trial court denied Cumberland's motion to dismiss. This decision was reflected in a journal entry filed by the trial court on March 25, 2013. The trial court concluded that while the delay from receipt of the DNA match in 2003 until the indictment in November 2012 was not justified, Cumberland had nonetheless failed to demonstrate actual prejudice as a result of the delay.

{¶ 15} Cumberland subsequently entered into a plea agreement with the state, wherein he agreed to enter a plea of no contest to the lesser-included offense of sexual battery, a third-degree felony in violation of R.C. 2907.03(A)(1). A change in plea hearing was held and the trial court accepted his plea of no contest.

{¶ 16} Cumberland was ultimately sentenced to thirty (30) months in prison. He filed a timely notice of appeal from his original entry of confinement and his appeal was assigned case number 13CA8. However, after receiving a telephone call from the Department of Rehabilitation and Corrections, the trial court returned Cumberland for a resentencing hearing. At the resentencing hearing, the trial court made findings regarding physical harm related to the offense and resentenced Cumberland to thirty (30) months in prison. Cumberland filed a timely notice of appeal from the amended entry and the appeal was assigned case number 13CA9. We *sua sponte* consolidated cases 13CA8 and 13CA9.

{¶ 17} Cumberland presents the following assignment of error for our review:

Assignment of Error:

Tony Cumberland was denied his right to due process when the trial court failed

to dismiss the indictment that was prosecuted after an unjustified nine-year pre-

indictment delay.  Fifth and Fourteenth Amendments, United States Constitution;

Section 16 Article I, Ohio Constitution; *State v. Luck*, 15 Ohio St.3d 150, 473

N.E.2d 1097 (1984); March 25, 2013 Decision.

{¶ 18}  In his sole assignment of error, Cumberland contends that the trial court should have granted his motion to dismiss the indictment.  He contends that the nine-year delay between the DNA match and the indictment violated his constitutional due process rights.  Under this assignment of error, Cumberland makes two separate arguments.  First, he argues that the delay prejudiced him because the deputy who handled the rape kit evidence in 1995, Donnie Walker, has since passed away.  Cumberland argues that because of the death of Walker, he was precluded from disputing the integrity of the DNA evidence that implicated him in the first place.  Second, Cumberland contends that he was prejudiced by the destruction of the medical records because the medical records had the victim's same-day account of the 1995 incident.  Without the records, Cumberland argues that he has no access to evidence of the incident outside of that collected by law enforcement.

{¶ 19}  "It is well settled that the right to a speedy trial does not arise until a person has been 'accused' of a crime."  *State v. Lewis*, 4th Dist. Athens No. 00CA10, 2001 WL 803818, *2 (Mar. 27, 2001), citing *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971).  " '[W]here the defendant is not subjected to any official prosecution a delay between the offense in question and commencement of prosecution does not violate the speedy trial guarantee contained in Section 10, Article I of the Ohio Constitution.' "  *Id.*, quoting *State v. Doksa*, 113 Ohio App.3d 277, 280, 680 N.E.2d 1043 (8th Dist.1996).

{¶ 20}  "However, a delay in commencing prosecution, even when there has been no official accusation, may violate a defendant's due process rights." *State v. Hahn*, 4th Dist. Washington No. 02CA22, 2003-Ohio-788, ¶ 8, citing *United States v. Lavasco*, 431 U.S. 783, 789, 97 S.Ct. 2044, 52 L.Ed.2d 752 (1977), and *State v. Luck*, 15 Ohio St.3d 150, 153-54, 472 N.E.2d 1097 (1984).  "To make this [due process] determination, the United States Supreme Court set out a test in *Marion*, 404 U.S. at 307, 92 S.Ct. at 455, and *Lovasco*, 431 U.S. at 783, 97 S.Ct. at 2044." *Lewis* at *2.

{¶ 21}  "The *Marion-Lovasco* test was subsequently adopted by the Supreme Court of Ohio in *State v. Luck* (1984), 15 Ohio St.3d 150, 472 N.E.2d 1097." *Id*.  The test, as set forth in *Luck*, is as follows:

> The defendant first has the burden of producing evidence to demonstrate that the delay caused actual prejudice to his defense.  See *Luck*, 15 Ohio St.3d at 157-58, 472 N.E.2d at 1104-05.  That being shown, the burden then shifts to the state to produce evidence of a justifiable reason for the delay.  See *Luck*, 15 Ohio St.3d at 158, 472 N.E.2d at 1105.  The court is then to view the prejudice suffered by the defendant in light of the state's reason for the delay.  See *Luck*, 15 Ohio St.3d at 154, 472 N.E.2d at 1102.

*Id*.

{¶ 22}  In order for a defendant to prove actual prejudice, he " 'most show, by concrete proof, the exculpatory value of any alleged missing evidence.' " *State v. Roberts*, 6th Dist. Lucas No. L-11-1159, 2013-Ohio-1089, ¶ 19, quoting *State v. Zimbeck*, 195 Ohio App.3d 729, 2011-Ohio-2171, 961 N.E.2d 1141, ¶ 21 (6th Dist.); *see also State v. Flickinger*, 4th Dist. Athens No. 98CA09, 1999 WL 34854, *5 (Jan. 19, 1999) ("[A] defendant must provide concrete proof

that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant."). Further, the alleged prejudice should not be speculative, and the court " 'must balance the claimed prejudice against the remaining evidence in the case, including any newly discovered evidence, to determine whether the missing evidence would have minimized or eliminated the impact of the state's evidence.' " *Roberts* at ¶ 19, quoting *Zimbeck* at ¶ 58.

{¶ 23} "Reviewing a trial court's decision on a motion to dismiss an indictment based upon a pre-indictment delay presents a mixed question of fact and law." *Hahn*, 2003-Ohio-788, at ¶ 9. "Thus, a reviewing court must accord due deference to the trial court's findings of fact, but may freely review the trial court's application of the law to the facts." *Id.*, citing *State v. Metz*, 4th Dist. Washington No. 96CA48, 1998 WL 199944 (Apr. 21, 1998.)

{¶ 24} Cumberland contends that the death of Deputy Donnie Walker, "casts a shadow of doubt" upon the integrity of the rape kit because Walker was the person responsible for collecting, cataloguing, and storing the rape kit upon completion by the Highland District Hospital. In other words, Cumberland argues that he cannot establish whether the rape kit was ever altered or tampered with without questioning Walker, an impossible task given Walker's death.

{¶ 25} To establish that he has been actually prejudiced by the inability to question Walker regarding the handling of the rape kit, Cumberland must show by concrete proof the exculpatory value of the unavailable witness. Mere speculation will not suffice. We find that because no evidence was presented below indicating a break in the chain in custody, the possibility that Walker's testimony *could have* established that the rape kit was tampered with, or altered is speculative at best. We note that in the hearings below, Cumberland did not produce a witness or other evidence to establish a break in the chain of custody, or to otherwise call into

question the integrity of the rape kit. Accordingly, Cumberland has not established the exculpatory value of the unavailable witness.

{¶ 26} Furthermore, in deciding whether the prejudice that is established by a defendant constitutes "actual prejudice," we must balance the claimed prejudice against the remaining evidence in the case, to determine whether the missing evidence would have minimized or eliminated the impact of the state's evidence. At the first hearing on the motion to dismiss, the cover sheet of the rape kit was admitted as an exhibit. The cover sheet clearly named the nurse and physician who conducted the examination of the victim and procured the rape kit evidence. The cover sheet also indicates that Deputy Walker retrieved the rape kit evidence at 4:00 a.m. on May 29, 1995. The cover sheet contains the signatures of the attending physician, the attending nurse, and Deputy Walker. Moreover, Detective Croy testified that Walker placed the rape kit in the department's evidence room until it was delivered to BCI&I. Finally, the record contains an "Evidence Submission Sheet," which indicates that the rape kit was submitted by the Highland County Sheriff's Office and received in the laboratory at the BCI&I on June 1, 1995. In the instant case, we do not find that the prejudice alleged by Cumberland as a result of his inability to question Walker, when balanced against the remaining evidence in the record, rises to the level of actual prejudice. There is simply no way of knowing whether Walker's testimony would have corroborated the state's evidence, or conversely, minimized its impact.

{¶ 27} Cumberland also argues that his defense was prejudiced by the destruction of the victim's medical records. In particular, he argues that "[i]t cannot be said that the records would not have put into question relevant aspects of the May 1995 incident, and thus [he] was prejudiced by the destruction of records." [Brief at 6-7.] Unfortunately for Cumberland, however, it also cannot be said that the records would not have corroborated the state's evidence

in the case.  Put another way, it is impossible to know whether the records were of inculpatory or

exculpatory value.  "[W]here the alleged missing evidence could be equally inculpatory, the

defendant has not met his burden."  *Zimbeck*, 195 Ohio App.3d 729, 2011-Ohio-2171, 961

N.E.2d 1141, at ¶ 57, citing *State v. Gulley*, 12th Dist. Clinton No. CA99-02-004, 1999 WL

1238427 (Dec. 20, 1999).

{¶ 28}  We find that Cumberland has failed to establish a violation of his due process

rights.  Cumberland has not shown that the pre-indictment delay caused him actual prejudice;

rather, his arguments are speculative in nature.  Having determined that Cumberland failed to

prove actual prejudice, it is not necessary to determine whether there were justifiable reasons for

the delay.

{¶ 29}  Accordingly, Cumberland's sole assignment of error is overruled, and the

judgment of the trial court is affirmed.

JUDGMENT AFFIRMED.

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED. Appellant shall pay the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earliest of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to the expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Harsha, J. and McFarland, J:  Concur in Judgment and Opinion.


For the Court

By:_____
            Marie Hoover, Judge


**NOTICE TO COUNSEL**

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.